Flint HOLDBROOK, Plaintiff,

v.

**CALIFORNIA FEDERAL
BANK, Defendant.**

No. 3:94–CV–245–X.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 25, 1995.

Steven Dunn, Dallas, TX, for plaintiff.

Karl Nelson, Dallas, TX, for defendant.

### *MEMORANDUM OPINION AND ORDER*

KENDALL, District Judge.

Now before the Court is the Defendant's Motion for Summary Judgment filed on September 6, 1994. After consideration of the motion, response, reply and the applicable law, the Court is of the opinion that the motion should be, and is hereby, **GRANTED.**

### Factual Background

Flint Holdbrook, plaintiff, filed suit in Dallas County District Court against Defendant, California Federal Bank FSB to recover retirement benefits. In his state cause of action, Plaintiff asserted claims under the DTPA, the Insurance Code, and breach of contract. In his second amended complaint filed in federal court on September 6, 1994, Plaintiff abandoned all of his original claims except his DTPA claims, and added claims of negligent misrepresentation and estoppel. Defendant removed the case to federal district court because the claims related to a Retirement Income Plan governed by the Employment Retirement Income Security Act of 1974, ("ERISA") 29 U.S.C. §§ 1001–1461.

In 1979, Holdbrook became an employee of California Federal Savings and Loan Association ("CalFed"), the predecessor in interest to the Defendant. In 1983, Plaintiff became a participant in the Retirement Income Plan offered by CalFed. Plaintiff alleges, and for purposes of this motion the Court will assume these allegations to be true, that during the course of his participation in the plan he was repeatedly given oral assurances that he would be eligible for a lump sum payment of his benefits should his participation in the plan end. In August 1992, Plaintiff was terminated from his position with the Defendant. After his termination, Plaintiff demanded his lump sum benefit payment and Defendant denied the request based upon his ineligibility for such a payment. Plaintiff based his demand for a lump sum payment upon a 1976 summary plan description ("SPD") and the oral representations of CalFed employees and agents.

CalFed maintains that all of Holdbrook's claims are preempted by ERISA and that oral modifications to an ERISA plan are ineffective. Holdbrook initially claimed that his claims were not related to an ERISA plan. In his response, however, Plaintiff admits that the plan was covered by ERISA and attempts to distinguish his claim as one solely for ERISA benefits. The Court finds that for the reasons discussed below that the plan is an ERISA plan, Plaintiff's claims "relate to" an ERISA plan, the oral representations were insufficient to modify the plan and all of Plaintiff's claims are preempted by ERISA.

### Summary Judgment Standard

The movant in a summary judgment context must show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Slaughter v. Southern Talc Co.,* 949 F.2d 167, 170 (5th Cir.1991). The existence of a genuine issue of material fact is determined based on whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 2510, 2512, 91 L.Ed.2d 202 (1986). In other

words, "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1504 (5th Cir. 1988). An issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Burgos v. Southwestern Bell Telephone Co.,* 20 F.3d 633, 635 (5th Cir.1994). At the summary judgment stage, a district court may not weigh the evidence or determine the truth of the matter but should only decide the existence of a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

■ The rules allocating the burden of proof guide a court in a summary judgment analysis, *Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991), and that allocation depends on the burden of proof that would apply at trial. *See Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 190 (5th Cir. 1991). The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Russ v. International Paper Co.,* 943 F.2d 589, 591 (5th Cir.1991), *cert. denied,* 503 U.S. 987, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune,* 837 F.2d 233, 239 (5th Cir.1988). When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Duckett v. City of Cedar Park,* 950 F.2d 272, 276 (5th Cir.1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits and other competent evidence,[1] "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion," *Rosado v. Deters,* 5 F.3d 119, 122 (5th Cir.1993) (quoting *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986)), the nonmovant may not rest on mere allegations or denials in its pleadings; in short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. The existence of a mere scintilla of evidence will not suffice. *Id.* at 252, 106 S.Ct. at 2512. When the nonmoving party fails to make the requisite showing and the moving party has met his summary judgment burden, the movant is entitled to summary judgment. FED. R.CIV.P. 56(c); *Campbell v. Sonat Offshore Drilling,* 979 F.2d 1115, 1119 (5th Cir.1992).

### Discussion

■ ERISA § .1002 defines employee pension benefit plans as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program
>
> > (i) provides retirement income to employees, or
> >
> > (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A). The term "employee benefit plan" is defined as including both pension plans and welfare plans. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). Under 29 U.S.C. § 1002(2)(A), ERISA regulates and governs employee pension benefit plans that "provide retirement income to employees or result in the deferral of income for

---

1. *See* FED.R.CIV.P. 56(e).

periods extending to the termination of covered employment or beyond...." The Court will initially decide if the plan at issue is an ERISA plan. Courts have defined "plan, fund or program" by synonyms. For example a "plan, fund or program" is any arrangement, scheme, design or program of action. The exact prerequisites for a "pension benefit plan" are not as clearly defined.[2] However, at a minimum any plan, fund, or program under ERISA implies the existence of intended benefits, intended beneficiaries, a source of income and a procedure to apply for and to receive benefits.

■ Based upon the summary judgment record, the Court determines that the CalFed plan is indeed an ERISA employee pension benefit plan. The Court had no difficulty ascertaining from the evidence submitted in support of the motion for summary judgment that the intended benefits were monthly income after retirement; the intended beneficiaries were those CalFed employees who participate in the plan; the source of income was both employee and CalFed contributions; and the procedures for receiving the benefits were governed by Section VIII of the 75–page plan. Indeed, section 20.8 of the plan expressly states that "[a]ll legal questions pertaining to the Plan shall be determined in accordance with ERISA...." While calling a plan an ERISA plan will not necessarily make it so, this plan is clearly an ERISA plan even without the express proclamation.

■ Having determined that the Plan is indeed an ERISA plan, the Court must now determine whether Holdbrook's claims are preempted by ERISA. State law claims are related to employee benefit plans, and are preempted, if the state claim has a connection with or reference to such a plan. *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. ERISA's provisions "supersede any and all State law claims insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has consistently emphasized the ex-

pansiveness of the term "relate to" standard and its purpose for establishing the regulation of pension plans as an exclusively federal concern. *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1217 (5th Cir.1992).

Holdbrook asserts that his claims relate solely to ERISA pension benefits, not to the ERISA plan itself, and should therefore escape the preemptive effect of ERISA. However, the Fifth Circuit has held that a claim which seeks damages which are measured by pension benefits provides a sufficient "connection" to an employee benefit plan for preemption purposes. Holdbrook seeks actual damages in the amount of the lump sum payment which was denied to him. In addition, he seeks damages under the Texas Deceptive Trade Practices Act measured by the amount of the lump sum payment as well as statutory damages. Clearly, Holdbrook's damages are measured by pension benefits. Additionally, the Fifth Circuit has held that common law contract and tort claims based upon laws of general application are preempted by ERISA. *Degan v. Ford Motor Co.,* 869 F.2d 889, 893 (5th Cir.1989). Holdbrook's state law claims for DTPA violations and negligent misrepresentation have a connection with or reference to the CalFed pension benefit plan, and therefore under the express terms of ERISA are preempted.

■ Finally, Holdbrook argues that ERISA should not preempt his state law claims because CalFed is estopped due to the express, false representations which were made to him concerning his entitlement to a lump sum payment. Holdbrook maintains that this Court should apply federal common law and find that CalFed is estopped to deny the representations made by its agents or employees. Congress intended that courts create federal common law with respect to disputes involving ERISA. *Degan,* 869 F.2d at 895. However, this power to create federal common law may only be applied to areas which statutory law preempts but does not address. *Id.* In this case, Holdbrook asks this Court to fashion federal common law

---

**2.** The Court notes that a definitive analysis exists for determining whether a particular plan falls within the statutory definition of an employee welfare benefit plan. *See Hubbard v. State Mutual Life Assurance Companies of America,* 832 F.Supp. 1079 (E.D.Tex.1993) (discussing the three-step analysis necessary to determine the existence of an employee welfare benefit program).

which would allow employees to hold their employers to oral assurances and platitudes concerning benefits and entitlement. This Court, under the statute and Fifth Circuit precedent, clearly has no power to fashion such a remedy. The Court is bound by ERISA's emphatic preference for written agreements. "ERISA expressly requires that '[e]very employee benefit plan shall be established and maintained pursuant to a written instrument.'" *Degan*, 869 F.2d at 895 (citations omitted). Additionally, "the plan must 'must provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan.'" *Id.* Thus, ERISA mandates that the plan itself and any changes to the plan must be in writing. Applying the common law theory of estoppel to ERISA plans would result in retirement plan administrators being required to pay claims from otherwise ineligible persons because a supervisor or other agent misrepresented the plan and its benefits, intentionally or otherwise. In an effort to preclude this very situation, the Fifth Circuit has held that ERISA prohibits oral modifications to benefit plans and that promissory estoppel is not a cognizable claim in a suit seeking to enforce alleged rights to pension benefits.

Holdbrook's claim of promissory estoppel based upon the 1976 summary plan must fail also. The Plan was amended after the 1976 Summary Plan Description in accordance with ERISA and the plans own terms. ERISA plans do not and cannot remain stagnant and unchanging from their inception. CalFed expressly retained the right to change the Plan or to discontinue it if the circumstances warranted that action in both the Plan itself and the Summary Plan Description that Holdbrook relies upon to establish his right to the lump sum payment. The 1976 SPD was not a misrepresentation, it simply stated the terms of the plan as it then existed. CalFed's subsequent legal amendments to the plan cannot form the basis of a promissory estoppel claim even if such a claim were recognized in this Circuit.

### Conclusion

For the reasons stated above, the Court finds that the CalFed plan is an ERISA plan.

Holdbrook's claims for DTPA violations and negligent misrepresentations are claims founded in tort and contract which are preempted by ERISA. Holdbrook's claims of promissory estoppel based upon oral misrepresentations is not cognizable under ERISA or federal common law. The Court determines that CalFed's motion for summary judgment should be **GRANTED** and all claims of the Plaintiff should be **DISMISSED with PREJUDICE**.

**SO ORDERED.**