# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 29, 2008

Charles R. Fulbruge III
Clerk

No. 07-51216

ERIC SANDERS; CARRIE L SANDERS

Plaintiffs - Appellants

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA; VANGUARD
HEALTH MANAGEMENT INC

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and OWEN and SOUTHWICK, Circuit Judges.

SOUTHWICK, Circuit Judge:

Eric Sanders is seeking reimbursement of Social Security disability insurance ("SSDI") benefits that he alleges Unum Life Insurance Company of America improperly deducted from his monthly long-term disability payment, as well as reimbursement of monthly minimum payments that Unum did not make for a period of years. The district court granted summary judgment in favor of Unum on both claims. We AFFIRM.

## I. BACKGROUND

In 1995, Sanders was involved in a motorcycle accident and suffered several physical injuries from which he recovered. On May 8, 1996, while working as an operating room technician, Sanders suffered a blow to the head

from an operating room light fixture. Sanders was subsequently diagnosed with a number of medical problems, including multiple head injuries, a seizure disorder, depression, and post-traumatic stress disorder.

Sanders was covered by a group long-term disability insurance policy with Unum through his then-employer. Under the policy, an employee with a long-term disability would receive a defined monthly payment, based on either a percentage of his salary or the policy maximum, with a deduction for "other income benefits." Other income benefits are defined to include the amount of disability benefits under the U.S. Social Security Act for which the insured, his spouse, and/or his children are eligible due to the insured's disability. In order to be valid deductions from Unum's monthly disability payment, other income benefits must be payable as a result of the same disability for which the benefit is paid under the Unum policy. However, Unum's policy does not define "same disability." The policy also has a provision limiting disability payments due solely to mental illness to twenty-four months of payments unless the insured is confined to a hospital or institution.

In June 1997, Sanders filed a claim with Unum. May 8, 1996, was stated as the date of onset for his disability. Unum approved his claim in August 1997, using Sanders' claimed onset date. Unum's date for the actual first payment was not until August 6, 1996, based on a requirement that 90 days must pass between the injury and the start of payments. Unum noted that Sanders had significant impairments that were "both psychiatric and organic in nature."

Over the next several years, Unum sought to confirm the extent of Sanders' disability. Sanders often did not comply with requests for information or medical records. In May 2000, Unum confirmed that Sanders suffered from a psychological disability. It still needed confirmation of Sanders' continuing physical disability. Finally, in July 2001, Unum was able to review the relevant documents. It determined that mental and physical conditions both supported

Sanders' disability. Unum then referred Sanders' file to its extended disability department.

During this same period, Unum was trying to establish whether Sanders was eligible for SSDI payments. In an August 1997 letter that informed Sanders that his disability claim was approved, Unum also reminded Sanders that he needed to file for SSDI benefits and that these benefits could be deducted from the monthly payments Unum was making. For the next few years, Sanders did not provide his SSDI information to Unum, while Unum continued to request it. In March 1999, Sanders applied for SSDI benefits. The Social Security Administration awarded Sanders $6,905 in back payments and $680 in monthly benefits beginning in February 2000. It set the "date disability began" as May 8, 1996, the same as Unum had. It awarded Sanders these benefits based on his disability due to mood and anxiety disorders. In April 2000, Sanders notified Unum that he had started to receive SSDI benefits. Unum determined that Sanders' SSDI benefits were for the same disability for which Unum was paying benefits. In August 2000, primary SSDI benefits began to be deducted from Sanders' monthly Unum payment.

Additionally, in Sanders' March 1999 letter notifying Unum that he had applied for SSDI benefits, Sanders completed Unum's disability payment option form. That form gave Sanders a choice. One choice was to have Unum estimate his SSDI payment, deduct the estimated amount from the monthly payment, and pay Sanders the remaining amount. The other was to receive the full monthly payment from Unum until the Social Security Administration made its decision. Sanders then would reimburse Unum for overpayments within thirty days of the first SSDI award check. Sanders chose the latter option. However, Sanders never paid Unum the lump-sum amount for overpayments. In June 2002, Unum began withholding the entire monthly payment to Sanders to recoup what Sanders owed. Unum made no payments to Sanders for forty-three

months. In February 2006, Sanders reminded Unum that under his policy, he was entitled to a monthly minimum payment of ten percent of his monthly payment before deductions for other income benefits. Unum immediately began paying the monthly minimum but continued to withhold the remainder of Sanders' monthly payment as it recouped the earlier overpayments.

On May 8, 2006, Sanders filed an ERISA claim in state court against Unum seeking reimbursement of the amount that Unum had deducted each month for his SSDI benefits. He also sought payment of the monthly minimum amount from Unum for the forty-three months in which Sanders did not receive any payment from Unum.[1] Unum removed the case to federal court. A magistrate judge issued a report and recommendation granting summary judgment in favor of Unum. The district court agreed. Sanders appeals.

## II. DISCUSSION

Absent any genuine issues of material fact, and if the moving party is entitled to judgment as a matter of law, summary judgment is proper. Fed. R. Civ. P. 56(c). A summary judgment in ERISA cases is reviewed de novo, applying the same standard as the district court. Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan, 493 F.3d 533, 537 (5th Cir. 2007).

Because Sanders' insurance plan gives Unum the discretion to determine eligibility for benefits and construe the plan terms, the district court was required to apply an abuse of discretion standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Under this standard, when "the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." Corry v. Liberty Life Assurance Co. of Boston, 499 F.3d 389, 397 (5th Cir. 2007). When the plan fiduciary is also the insurer, our review of its exercise of discretion must take into account the conflict of interest

---

[1] Originally, Sanders' wife was also a party to this suit. She sued Unum and Vanguard Health Management, Inc.; however, all of her claims were dismissed and none were appealed.

that the dual roles create. Wade, 493 F.3d at 538. Even so, the conflict is only one of several considerations. Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2351 (2008). Any one factor can act as a tiebreaker when the other factors are closely balanced. Id. As we will explain, we do not find a particularly close balance and therefore do not use the inherent conflict as a tiebreaker.

Sanders raises four claims on appeal. Because of our resolution of the first issue, we need not consider two arguments concerning potentially late-raised affirmative defenses.

A. Whether the SSDI and Unum Benefits Arose from the Same Disability

Sanders contends that Unum should not have deducted his SSDI benefits because those benefits were awarded for a separate disability from that covered by the payments from Unum. He argues that Unum's benefits were only payable as a result of his physical disability, while the SSDI payments were payable as a result of his mental disability. If some of Unum's payments covered a mental disability, Sanders argues the payments would have been reduced after the twenty-four-month limit on payments for mental illness. There never was any reduction in the amount of payment due to that reason.

In response, Unum argues that "same disability" means the same inability to work. Unum contends that all medical problems resulting from the May 8, 1996 incident with the operating room light fixture contribute to Sanders' inability to work and are therefore part of the same disability. Consequently, because both Unum and the Social Security Administration recognize May 8, 1996, as the disability onset date, both payments arise out of the same disability. The district court agreed with Unum.

We conclude that this disputed interpretation is not controlling on the issue before us. Even if the SSDI payments only applied to Sanders' mental disability, Unum had always based its payments to Sanders on both mental and physical impairments. The record supports this conclusion. In March 2000, in

an internal review of Sanders' case, Unum found that Sanders was disabled from psychological disorders. Also found was that if a physical disability could not be established, Unum would apply a twenty-four-month payment limit. However, Unum's records reveal that if Sanders had both a psychological and a physical disability, it would continue to pay the same monthly benefits for the remainder of the period covered under the long-term policy.

The record indicates that Unum paid Sanders the same monthly benefit before deductions from August 1996 through at least January 2007. This supports a finding that Unum did not distinguish between physical as opposed to psychological problems when making monthly payments to Sanders for long-term disability. Because Unum has always been paying based on physical and mental disability, even if the SSDI benefits applied solely to Sanders' psychological problems, they arise out of the same disability as support Unum's benefits. As plan administrator, Unum did not abuse its discretion in deciding that Sanders' SSDI benefits were other income benefits arising from the same disability for which Unum was paying monthly benefits.

Because of this finding, we do not reach the issue of whether Unum raised in a timely manner the affirmative defenses of the statute of limitations and exhaustion of administrative remedies.

B. Whether Sanders Waived His Monthly Minimum Payment Argument

The remaining issue is whether Unum's failure for a forty-three-month period to make a minimum payment has any impact on the case.

Sanders raised the issue in his original and amended motions for summary judgment. Those motions were denied. In Unum's cross-motion for summary judgment, it argued that previously unpaid monthly minimum benefits were no longer owed. There was no obligation, Unum said, because Sanders still needed to reimburse Unum for the payments it had made that overlapped his SSDI benefits. Sanders never responded to this evidence or acknowledged that he

agreed to pay Unum an immediate lump sum for any overpayment. The district court held that this lack of response indicated that Sanders abandoned his monthly minimum payment claim. In the alternative, the district court held that by not addressing his agreement to return any overpayment to Unum immediately in one lump-sum payment, Sanders failed to raise a genuine issue of material fact to defeat summary judgment.

On appeal, Sanders continued his focus on other issues and barely noted his monthly minimum payment argument. In his initial brief to this court, Sanders mentioned this issue but never addressed what error he saw in the district court's alternative rulings. Specifically, he never informed us why we should find that he did not abandon the claim or that he had raised a genuine issue of material fact before the district court. Instead, he just made the conclusory claim that he was entitled to monthly minimum payments for the forty-three months in which he did not receive one.

"A party waives an issue if he fails to adequately brief it" on appeal. Audler v. CBC Innovis Inc., 519 F.3d 239, 255 (5th Cir. 2008) (citation omitted). Merely mentioning a claim does not constitute a supported argument or adequate briefing. Sanders did finally discuss the district court's decision on this issue in a limited manner in his reply brief. The relevant question is whether Sanders is entitled to recoup missed minimum payments even though he has an obligation to pay Unum a lump sum. In his reply brief, Sanders cited a case in which Unum had to continue making the minimum monthly payments despite being owed reimbursement for the amount of SSDI benefits. UNUM Life Ins. Co. of Am. v. Long, 227 F. Supp. 2d 609, 613-14 (N.D. Tex. 2002). Whether Unum has to make the current minimum payments is not our issue – Sanders has been receiving minimum payments since 2006.

We have identified the issue but not resolved it, because Sanders' mere reference to the minimum payment question in the opening brief constitutes a

waiver.  An argument first supported in a reply brief comes too late because the appellee is not entitled thereafter to respond.

The district court's judgment is AFFIRMED.