# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 4, 2014

Lyle W. Cayce
Clerk

No. 14-20158

JOE HOLLINGSHEAD, Individually and as Representative
of All Persons Similarly Situated,

Plaintiff-Appellant,

v.

AETNA HEALTH INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-231

Before KING, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Joe Hollingshead ("Hollingshead") brings this putative class action against Defendant-Appellee Aetna Health Inc. ("Aetna") alleging that Aetna wrongfully denied him and other similarly situated individuals medical benefits in violation of the Employee Retirement Income Security Act ("ERISA"). The district court dismissed Hollingshead's ERISA claims pursuant to Fed. R. Civ. P. 12(b)(6), and also denied Hollingshead's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20158

request to amend his complaint for a second time.   For the reasons set forth below, we AFFIRM.

Hollingshead is a participant in a self-funded ERISA benefit plan ("the Plan"), which is provided by Hollingshead's employer, Chevron Phillips. Hollingshead's son, Shay, is a beneficiary under the Plan.   Aetna is the Plan's claims administrator.

As the district court correctly observed, the Plan contains a number of different provisions pertinent to the resolution of this case.   First, the Plan contains a Coordination of Benefits ("COB") provision, which provides:

> Many people have medical coverage from more than one source. When this happens, benefits payable from [the Plan] are coordinated with coverage you may have under another group medical plan.

A separate section of the Plan titled "How Health Care Coordination of Benefits Works" elaborates on the "COB" provision:

> You or a covered dependent may be entitled to benefits from another source that pays all or part of the expenses incurred for health care (medical, mental health or dental).   If this is the case, benefits from [the Plan] may be reduced to an amount which, together with all benefits payable by other group plans, would not exceed the amount [the Plan] would have paid if no other plans existed . . . .

As this provision explains, the Plan considers one source of insurance coverage "primary" and another source of coverage "secondary."   This distinction affects the order of benefit payments as follows:

> If [the Plan] is primary, its benefits are determined before those of another plan.   The benefits of the other plan are not considered. When [the Plan] is secondary, its benefits are determined after those of the other plan.   In such a case, this [P]lan's benefits may be reduced because of the other plan's benefits.

No. 14-20158

Of particular relevance, the Plan also contains a provision outlining the effect of No-Fault Auto Insurance vis-à-vis coverage under the Plan:

> First-party auto insurance coverage is considered primary. The [P]lan coordinates the benefits payable under the [P]lan with the first-party benefits that automobile insurance pays or would pay without regard to fault for the same covered expenses. This also applies to the extent first-party auto insurance coverage is legally required but not in force.

Finally, the Plan also contains a provision (labeled "Information and Records") that explains the consequences of failing to provide Aetna with necessary information and documentation:

> At times the plan administrator or the claims administrator may need additional information from you. You agree to furnish all information and proofs that may reasonably be required regarding any matters pertaining to the [P]lan. If you do not provide this information when it is requested, payment of your benefits may be delayed or denied.

On October 19, 2012, Shay was seriously injured in an automobile accident and hospitalized at Memorial Hermann Hospital. Hollingshead submitted numerous medical claims for this treatment to Aetna. As reflected by correspondence attached to Hollingshead's first amended complaint, Aetna requested information from Hollingshead about the applicability of any no-fault insurance coverage and pended processing of the claims until it received this information. For example, on January 2, 2013, Hollingshead received an e-mail from Sandra Howard, who is a patient account representative at Memorial Hermann Hospital, which explained:

> Per our phone conversation on Monday Aetna will require accident details from Shay and also will need a letter from HIS auto insurance stating if they are going to pay any of his medical or PIP [*i.e.,* Personal Injury Protection] [;] if he had liability only then just have them send letter of exhaustion. You can email or fax me this information and I will get it to Aetna for you. Aetna has denied

3

his claims until they receive this information, any questions please call me.

Additionally, on February 11, 2013, Aetna sent Hollingshead a letter again requesting information related to no-fault insurance coverage in order to process the claim, which specifically stated:

> Please send a statement from your no-fault automobile insurance company showing whether these expenses have been paid or denied. When we receive this information, we will process this claim.

Rather than provide Aetna with any of the requested information about the applicability or not of no-fault insurance coverage, Hollingshead filed the instant putative class action lawsuit on January 13, 2013.[1]

Pertinent to this appeal,[2] Hollingshead leverages two ERISA claims against Aetna. First, he asserts claims under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to "recover all unpaid, properly submitted medical expenses incurred under the clear terms of the plan or policy, and all statutory, equitable, or remedial relief as deemed appropriate[.]" Second, he brings a claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which provides a cause of action for injunctive or equitable relief for breach of fiduciary duty.

Aetna moved to dismiss the original complaint, and Hollingshead soon thereafter filed an amended complaint. The thrust of Hollingshead's amended complaint is that Aetna breached its obligations under the Plan, and thus violated ERISA, by "immediately" denying his medical claims rather than

---

[1] As the district court accurately noted, "Hollingshead does not claim that he ever provided the requested automobile insurance information, and the record shows that Aetna was still requesting the information when Hollingshead filed the lawsuit." *Hollingshead v. Aetna Health Inc.*, No. 4:13-CV-231, 2014 WL 585397, at *1 (S.D. Tex. Feb. 13, 2014).

[2] Hollingshead also asserted various state- and common-law claims against Aetna. The district court dismissed those claims as preempted by ERISA, and Hollingshead does not challenge this result on appeal. We therefore do not address those claims.

denying them upon his failure to provide the requested no-fault insurance (*i.e.,* personal injury protection or "PIP") information.[3]   The amended complaint also included various exhibits, including (1) the Plan, (2) correspondence reflecting Aetna's attempts to obtain no-fault insurance information from Hollingshead in order to process the claims for Shay's medical expenses, and (3) e-mail correspondence between a member of the Memorial Hermann Hospital staff and Hollingshead's counsel, in which Hollingshead's counsel references an unidentified patient whose claims also may have been denied by Aetna pending receipt of liability insurance.   Aetna once again moved to dismiss, and Hollingshead thereafter moved for leave to file a second amended complaint. During the pendency of these motions and following limited discovery, Hollingshead filed a motion for partial summary judgment and, thereafter, an amended motion for partial summary judgment, which sought declaratory relief.

On February 13, 2014, the district court dismissed both of Hollingshead's ERISA claims for failure to state a claim.   First addressing Hollingshead's claim that Aetna breached its fiduciary duty in violation of ERISA § 502(a)(3), the district court held that this claim could not be maintained given that Hollingshead had an adequate mechanism for redress of denied benefits under section 502(a)(1)(B).   *See Tolson v. Avondale Indus. Inc.,* 141 F.3d 604, 610 (5th Cir. 1998) ("In *Varity v. Howe,* 516 U.S. 489 [] (1996), the Supreme Court

---

[3] In his amended complaint, Hollingshead also alleged that Aetna violated the Plan by immediately denying claims until it was presented with evidence of uninsured motorist ("UIM") coverage—effectively amounting to, in Hollingshead's words, a "preemptive[] assert[ion]" of Aetna's subrogation interest under the Plan.   The district court dismissed this claim, concluding that Hollingshead did not allege any facts that Aetna ever requested information regarding potential UIM—as opposed to PIP—coverage at any time. Hollingshead has waived this issue by not presenting it on appeal.   *See Sanders v. Unum Life Ins. Co. of Am.,* 553 F.3d 922, 926 (5th Cir. 2008).

No. 14-20158

interpreted section 1132(a)(3) to allow plaintiffs to sue for breach of fiduciary duty for personal recovery when no other appropriate equitable relief is available. Because [the plaintiff here] has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section 1132(a)(1), relief through the application of Section 1132(a)(3) would be inappropriate.").

Next, the district court evaluated whether Hollingshead had stated a claim under section 502(a)(1)(B) for Aetna's purportedly immediate "denial" of medical claims pending receipt of no-fault insurance information. Viewing the complaint in the light most favorable to Hollingshead, the district court concluded that Hollingshead failed to state a claim under section 502(a)(1)(B) given that Aetna acted in accordance with the express terms of the Plan. According to the court:

> Under the clear and unambiguous terms of the Plan's "COB" provisions, no-fault, first-party, automobile insurance is primary to the Plan, and therefore, benefits under the Plan are secondary and determined after those of an applicable automobile insurance policy. To effectuate this coordination of benefits and order of payment, the Plan specifically requires Aetna to request personal injury protection ("PIP")/no-fault coverage information *before* it adjudicates a claim. In addition, the terms of the Plan require the beneficiary "to furnish all information and proofs that may reasonably be required regarding any matters pertaining to the plan." If the information is not provided when requested, payment of benefits "may be delayed or denied." Hollingshead does not claim that he ever provided the requested information. Further, the record belies Hollingshead's assertion that his claims were "immediately denied." The letter sent from Aetna to Hollingshead on February 11, 2013, clearly indicates that the claims had not yet been processed. Based on the "COB" provisions, Aetna acted in accordance with the terms of the Plan by requesting the PIP-coverage information before adjudicating Hollingshead's claims.

6

No. 14-20158

*Hollingshead*, 2014 WL 585397, at \*8 (internal citations omitted).    Finally, the district court denied Hollingshead's motion for leave to file a second amended complaint, concluding, *inter alia*, that the "facts [he] adds to the SAC do nothing to support his claims, or enable him to survive a motion to dismiss."    *Id*. at \*9.[4]

We find no error in the district court's dismissal of Hollingshead's ERISA claims.    Applying *de novo* review as we must do in evaluating a district court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6), *see Ferrer v. Chevron Corp*., 484 F.3d 776, 780 (5th Cir. 2007), we agree that Hollingshead has failed to state a claim under section 502(a)(1)(B) that Aetna wrongfully denied medical benefits in violation of the Plan.    The materials attached to Hollingshead's first amended complaint establish that Aetna acted in accordance with the Plan's terms when it pended the processing of Hollingshead's claims subject to receiving information related to no-fault insurance coverage.    Hollingshead's conclusory allegation that Aetna improperly "denied" his benefits is insufficient to survive dismissal because it is contradicted by the documents attached to his first amended complaint.    *See Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.") (internal citation omitted).

---

[4] The district court also concluded that Hollingshead's class allegations, "including his anecdotal story of the teenage boy at Memorial Hermann [as referenced in an e-mail from Hollingshead's lawyer to a hospital employee] and his completely unsupported allegation that Aetna engages in a practice of 'preemptive subrogation' '100's or 1000's of times per day,' are woefully inadequate to state a plausible claim for relief.    As such, all of his class claims must be dismissed pursuant to Rule 12(b)(6)."    *Id*. at \*7.    On appeal, Hollingshead's opening brief neglects to dispute or argue this conclusion, and we therefore do not address it.

No. 14-20158

In addition, we agree that our decision in *Tolson* is fatal to Hollingshead's claim that Aetna breached its fiduciary duty in violation of ERISA § 502(a)(3). *See* 141 F.3d at 610 (holding that plaintiff could not maintain claim for breach of fiduciary duty under section 1132(a)(3) because he had "adequate redress for disavowed claims through his right to bring suit pursuant to section 1132(a)(1)"). As we explained in that case, "[t]he simple fact that [Hollingshead cannot] prevail on his claim under section 1132(a)(1) does not make his alternative claim under section 1132(a)(3) viable." *Id.*[5]

We likewise perceive no error in the district court's denial of Hollingshead's motion for leave to file a second amended complaint. "Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). We agree with the district court that Hollingshead's proposed additions to his complaint are "futile and frivolous." In particular, his effort to add an additional state-law claim is frivolous given that ERISA clearly preempts such claims, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46–48 (1987), and his proposed factual additions do nothing to rescue his claims from dismissal pursuant to Fed. R. Civ. P. 12(b)(6). In sum, because Hollingshead was already afforded an opportunity to amend his complaint and the proposed second amendment would be futile, we conclude that the district court did not abuse its discretion in denying Hollingshead's motion to amend. *See Marucci Sports*, 751 F.3d at 378–79.

For all the foregoing reasons, we AFFIRM.

---

[5] Because we conclude that the district court properly dismissed Hollingshead's claims pursuant to Fed. R. Civ. P. 12(b)(6), we need not address his argument that the district court should have granted his motion for partial summary judgment.